# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MINDY BICKEL,** | : | Civil No. 1:21-CV-1494 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **STATE FARM MUTUAL** | : | |
| **AUTOMOBILE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM ORDER

### I.   Factual Background

This is an insurance dispute between Mindy Bickel and an insurer, State Farm Mutual Automobile Insurance Company, relating to Bickel's claim for uninsured motorist ("UIM") benefits under a policy issued by State Farm. With respect to this insurance dispute the pertinent facts can be simply stated.

This case arises out of a motor vehicle accident that occurred June 19, 2019, on State Route 322 in Lebanon County, Pennsylvania. The plaintiff was a passenger in her vehicle and was rear-ended by a vehicle operated by an underinsured motorist, Yin Lu, whose negligence is not disputed. Ms. Bickel has reached a settlement with the tortfeasor's insurance carrier. At the time of the accident, Ms. Bickel was insured

by an auto insurance policy with State Farm Mutual Automobile Insurance Company, which provides for underinsured motorist benefits in the amount of $250,000 and first party medical benefits coverage of $5,000. In this lawsuit, Ms. Bickel sues State Farm for breach of contract to recover underinsured motorists ("UIM") benefits for the plaintiff's alleged injuries and damages.

This case is set for trial in November of 2022. In anticipation of trial State Farm filed a motion *in limine*, (Doc. 28), which alleged that:

> 7. The only issue before this court is the amount of damages the Plaintiff is entitled to as a result of injuries she alleges she sustained in the subject accident.
>
> 8. At the time of the subject accident, the Plaintiff was employed as an Associate Commissioner with the United States Patent and Trademark Office.
>
> 9. Following the subject accident, the Plaintiff was diagnosed with breast cancer in 2021 and had to undergo surgery for the same.
>
> 10. The Plaintiff does not contend that her breast cancer diagnosis is in anyway related to the subject accident.
>
> 11. According to the Plaintiff, the Office of Personnel Management allows federal employees to "cash out" their accrued annual leave in a lump sum at retirement.
>
> 12. The Plaintiff alleges that she depleted her sick leave while recovering from the subject accident, and therefore, had to use her annual leave while recovering from her first surgery in 2021 and follow-up surgery in 2022.

> 13. As a result, the Plaintiff alleges that her annual leave payout at retirement will be approximately $14,108.44 less than it would have been but-for the subject accident. Essentially, she maintains that if she did not have to use her sick leave following the subject accident, she would have been able to use her sick leave following her surgeries, and therefore would not have had to use her annual leave.
>
> 14. It is therefore anticipated that the Plaintiff, and/or her witnesses, will refer to her breast cancer diagnosis and treatment during the course of trial as part of her claim for these damages.
>
> 15. Any such reference to the Plaintiff's breast cancer, however, is not relevant to the issues being presented at trial and is unfairly prejudicial to the Defendant.

(<u>Id</u>., ¶¶ 7-15). Arguing that this information is irrelevant, and potentially prejudicial and confusing, State Farm seeks to have this evidence excluded from the trial of this case.

For her part, Ms. Bickel has responded to this motion stating that:

> Plaintiff should be permitted to explain her current medical condition, i.e., her breast cancer, rather than allowing the jury to speculate about this undisclosed medical condition. In reality Plaintiff would suffer unfair prejudice under Rule 403 as the jury could speculate that Plaintiff had a preexisting or subsequent condition, illness, or injury that overlaps her claimed injuries int his [sic] case. Furthermore, the loss of her sick and annual leave hours in treating for the instant motor vehicle accident has resulted in increased stress and concern, i.e., mental and emotional damages, because Plaintiff did not have those sick and annual leave hours to use to address her breast cancer.
>
> In sum, there is nothing irrelevant or unfairly prejudicial to Defendant in disclosing Plaintiff's breast cancer diagnosis and treatment for the reason of explaining the nature and extent of

3

> Plaintiff's mental and emotional damages. Furthermore, this Honorable Court may instruct the jury that their determination in this matter should not be based upon sympathy for either party, thereby alleviating Defendant's concerns in this regard.

(Doc. 38 at 2-3). Balancing the considerations of relevance and prejudice raised by this testimony, for the reasons set forth below, the motion *in limine* is GRANTED, in part as follows: We will permit Ms. Bickel to testify that following her use of sick leave to recover from this accident, she was diagnosed with an unrelated serious medical condition, and was required to take and lose accrued annual leave to treat this serious unrelated medical condition. However, because the specific nature of her illness is not directly relevant to this claim and given that a cancer diagnosis can be emotionally charged information, see generally Borgren v. United States, 716 F. Supp. 1378, 1379 (D. Kan. 1989), the plaintiff will not be permitted to specifically testify that she was diagnosed with this condition. We will also be prepared, upon request, to provide the jury with a limiting instruction advising them that Ms. Bickel has testified that she later experienced an unrelated serious illness which required her to use leave; that they should not speculate regarding the nature of that illness; that their verdict should be based solely on the evidence presented at trial; and that the verdict should not be based upon any bias or sympathy that they may feel for either party.

**II.     Discussion**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

Legally, there are several different bases for motions *in limine*. First, such motions are filed when it is alleged that evidence is going to be offered that is improper under the Federal Rules of Evidence. In considering motions *in limine* that call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are

therefore reviewed only for abuse of discretion ... Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.' " Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy that shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

Adopting this view of relevance, it has been held that "[u]nder [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.' " Frank v. Cty. of Hudson, 924 F. Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles

favoring inclusion of evidence are, however, subject to some reasonable limitations. Thus, Rule 403, provides grounds for exclusion of some potentially irrelevant but highly prejudicial evidence, stating that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion that favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Guided by these general legal tenets, we find that the fact that Ms. Bickel was required to use substantial sick leave recovering from this accident, and then was compelled to use extensive annual leave when she was later diagnosed with an unrelated serious medical condition, breast cancer, is relevant to a determination of the lost annual leave portion of her damages claim. Moreover, we understand that State Farm does not contest the relevance of this evidence since State Farm concedes

that "if, and when, the Plaintiff presents her annual leave payout loss claim to the jury, she should . . . be allowed to state that she had to use annual leave, instead of sick leave, while recovering from a medical issue (unspecified)." (Doc. 29 at 4). However, State Farm argues that Ms. Bickel should only be able to allude to a subsequent, unspecified, medical condition when presenting testimony concerning this aspect of her claim, without identifying the condition as breast cancer or describing it as a serious medical condition. Thus, State Farm's objections to specific detailed testimony regarding this subsequent medical condition and treatment are grounded upon concerns of undue sympathy or prejudice if the details of this unrelated, but grave, illness is disclosed at trial.

For her part, Ms. Bickel emphasizes that her later need for the sick leave she had exhausted treating the auto-related injury is relevant to assessing this lost annual leave and associated emotional distress damages claim. Moreover, she contends that exclusion of any testimony concerning the nature of her later illness may lead the jury to speculate, and potentially trivialize the urgency of these subsequent leave needs.

Balancing these competing concerns regarding potential prejudice arising from the introduction of relevant evidence relating to Ms. Bickel's lost annual leave damages claim, we conclude that the appropriate course would be to permit Ms.

Bickel to testify that following her use of sick leave to recover from this accident, she was diagnosed with an unrelated serious medical condition, and was required to take and lose accrued annual leave to treat this serious unrelated medical condition. Thus, we will allow the plaintiff to accurately characterize her subsequent medical condition as an unrelated, but serious illness, thereby avoiding the plaintiff's concerns that without some description the jury might trivialize Ms. Bickel's later leave needs to treat her cancer. However, because the specific nature of her illness is not directly relevant to this claim and given that a cancer diagnosis can be emotionally charged information, see generally Borgren v. United States, 716 F. Supp. 1378, 1379 (D. Kan. 1989), the plaintiff will not be permitted to specifically testify that she was diagnosed with this condition. We will also be prepared, upon request, to provide the jury with a limiting instruction advising them that Ms. Bickel has testified that she later experienced an unrelated serious illness which required her to use leave; that they should not speculate regarding the nature of that illness; that their verdict should be based solely on the evidence presented at trial; and that the verdict should not be based upon any bias or sympathy that they may feel for either party.

    An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MINDY BICKEL,** | : | Civil No. 1:21-CV-1494 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **STATE FARM MUTUAL** | : | |
| **AUTOMOBILE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## **ORDER**

For the forgoing reasons, IT IS ORDERED that the defendant's motion *in limine* (Doc 28) is GRANTED, in part as follows: We will permit Ms. Bickel to testify that following her use of sick leave to recover from this accident, she was diagnosed with an unrelated serious medical condition, and was required to take and lose accrued annual leave to treat this serious unrelated medical condition. However, because the specific nature of her illness is not directly relevant to this claim and given that a cancer diagnosis can be emotionally charged information, the plaintiff will not be permitted to specifically testify that she was diagnosed with this condition. We will also be prepared, upon request, to provide the jury with a limiting instruction advising them that Ms. Bickel has testified that she later experienced an

unrelated serious illness which required her to use leave; that they should not speculate regarding the nature of that illness; that their verdict should be based solely on the evidence presented at trial; and that the verdict should not be based upon any bias or sympathy that they may feel for either party. And the plaintiff is precluded from referring to the amount of the policy limits, premium payments, or the amounts of the tortfeasor's policy limits and settlement at the trial of this case.

                                                              */s/ Martin C. Carlson*
                                                              Martin C. Carlson
                                                              United States Magistrate Judge

Dated:   October 11, 2022.